Floyd **BRISTER,** et al.

v.

**ALL STAR CHEVROLET, INC.,** et al.

No. CIV. A. 96–3447–B–MI.

United States District Court,
E.D. Louisiana.

Aug. 27, 1997.

## ORDER AND REASONS

BERRIGAN, District Judge.

This matter is before the Court on summary judgment motions filed by defendants Aegis Auto Finance, Inc. ("Aegis"), All Star Chevrolet, Inc. ("All Star"), and Chase Manhattan Bank U.S.A., N.A. ("Chase").[1] Having considered the record, the parties' arguments and the applicable law, the Court grants Aegis and Chase's motions, grants in part All Star's motion, and denies in part All Star's motion.

### Background

Plaintiffs Floyd Brister, Lena Brister, and Miriam Smith ("plaintiffs") have brought claims against All Star arising from their automobile purchases from All Star.[2] They

---

1. Aegis describes its motion as a "Motion for Summary Judgment and Rule 12(c) Motion to Dismiss." However, taking into consideration that Aegis effectively adopts Chase's motion, which is only a motion for summary judgment, and taking into consideration that Aegis relies upon evidence outside the pleadings, the Court finds it proper to consider Aegis' motion simply as a motion for summary judgment.

2. This matter before the Middle District of Louisiana was assigned to this Court for service by designation in the Middle District subsequent to recusals by the judges in the Middle District. (*See* Rec. Docs. 4 and 6).

also have filed claims against Chase and Aegis, the assignees of the consumer contracts executed in connection with the automobile sales to Smith and the Bristers, respectively. Plaintiffs have alleged that in connection with their automobile purchases and related consumer credit contracts, All Star included fees in the disclosed amount financed that were in excess of the fees All Star actually paid to the State of Louisiana. Plaintiffs also allege that All Star charged them additional fees for ad valorem taxes that All Star, not the plaintiffs, was required to pay to the state. As to liability, it appears from plaintiffs' latest complaint—the second amended complaint—that they have set forth three claims: 1) Alleged violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.* and Federal Reserve Board Regulation Z ("Count I"); 2) "Unjust Enrichment/Restitution" ("Count II"); and 3) Alleged violations of the Louisiana Motor Vehicle Sales Finance Act ("LAFSA"), La. R.S. 6:956, *et seq.,* due to unauthorized charges ("Count III").[3] Defendants All–Star, Aegis, and Chase have each filed summary judgment motions seeking dismissal of the claims against them. Plaintiffs have filed a single consolidated opposition to the three motions.

## *Discussion*

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of setting forth the basis for its motion and identifying the pleadings, depositions, answers to interrogatories, admissions of file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Once a proper motion has been made, the non-moving party may

not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue of fact for trial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53. Factual questions and inferences are viewed in the light most favorable to the nonmovant. *Rogers v. Int'l Marine Terminals, Inc.,* 87 F.3d 755, 758 (5th Cir.1996). Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to its case on which it bears the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

## *I. TILA claims*

The first count of plaintiffs' complaint alleges that All–Star's TILA disclosure statements violated TILA and Regulation Z. Plaintiffs allege that All Star, Aegis, and Chase are liable under TILA and Regulation Z because of overcharges for official fees improperly stated in the disclosure statements. *See* Second Amended Compl. at 1. Plaintiffs Bristers cite a $113.50 license fee charge listed on the disclosure statement for "Reg." and "Government Certificate of Title Fees." Plaintiffs claim that the actual license fees charged by Louisiana were less than this $113.50 charge and that All Star retained the difference. Plaintiffs also claim that Chase was aware of this alleged overcharge. Plaintiff Smith cites a $76.00 charge for "License Fee". Plaintiffs claim that this the actual fee paid to Louisiana for licensing fees was "substantially less" than $76.00 and that All Star retained the difference.[4] Plaintiffs further allege that Aegis was aware of these alleged overcharges.

## A. Alleged Inaccurate Disclosure of "Finance Charge"

Plaintiffs first theorize that All Star is liable under TILA and Regulation Z because the allegedly overstated amounts in the "Reg."/title charge of $113.50 and the license fee of $76.00 were not disclosed as a "finance

---

**3.** Plaintiffs have amended their complaint to eliminate a RICO claim; however, this amendment does not affect these motions because the RICO claim did not involve the moving defendants in the first place.

**4.** Plaintiffs also claim that All Star overstated a $18.50 charge for "Title Fee", and a $5.00 charge for "Lien or Filing Fee". *Id.*

charge." *See* Second Amended Compl. at 22. Plaintiffs allege that Chase and Aegis are liable for these undisclosed "finance charges" in their capacity as assignees.

This claim faces the same threshold "comparable cash transaction" exception issue that plaintiffs' counsel has faced before here in the Middle District of Louisiana, the previous cases being before Judge Polozola. *E.g., White v. Diamond Motors, Inc.,* 962 F.Supp. 867 (M.D.La.1997); *Green v. Levis Motors, Inc.,* C.A. 96–508 (M.D.La.1997); *Turner v. II Diamond Motors, Inc.,* C.A. 96–336 (M.D.La.1997).

■ TILA and Regulation Z utilize a definition of "finance charge" which excludes charges payable in a "comparable cash transaction." 15 U.S.C. § 1605(a); 12 C.F.R. § 226.4(a). Under the same basic facts as this matter, Judge Polozola found that a license fee scenario comparable to those in this situation was not a "finance charge". *White,* 962 F.Supp. at 870–72. Adopting the reasoning set forth in *White,* the Court finds that the fee at issue is not a "finance charge" under TILA or Regulation Z.[5] Plaintiffs' TILA and Regulation Z finance charge claim is dependent upon the fee being defined as a "finance charge". *Id.* Since it is not a "finance charge", All–Star is entitled to judgment as a matter of law regarding this claim.

Because there is no primary liability, Aegis and Chase are also entitled to summary judgment regarding their secondary liability as assignees. *White,* 962 F.Supp. at 871–72 (without primary liability, assignee "off the hook as well").

B. Alleged inaccurate disclosures of "Reg." or "License fee."

(1) All–Star's liability

Plaintiffs secondly theorize that All Star is liable for "false representation that the

$113.50 and $76.00 charges had been paid to the state of Louisiana for official fees and 'license fees,' respectively, when this was not the case, violating 15 U.S.C. § 1638 and 12 C.F.R. § 226.18."[6] Second Amended Compl. at 22.

■ In response to the Bristers' claim, All Star has submitted an affidavit from Dennis Carlin, III, its manager of information systems, stating that the totality of the $133.00 in fees charged to the Bristers, including the $95.00 "Reg." fee, constituted fees "paid to others." All Star's Memo., Exh. 1, paragraph 11. The plaintiffs have failed to provide any evidence to dispute Carlin's representation that the Bristers' fees, including the "Reg."/title fees, were all paid to Louisiana. Plaintiffs have failed to show that All Star retained an upcharge in the Bristers' case. Summary judgment is appropriate in favor of All Star regarding the Bristers' disclosure claim.

In Smith's case, All Star does not dispute that it retained part of the $56.00 charged to Smith for license fee. As All Star properly notes, the analysis next turns to whether this "overcharge" should have been disclosed.

Judge Polozola faced this same issue in *Green.* Following Judge Posner's opinion in *Gibson v. Bob Watson Chevrolet–Geo, Inc.,* 112 F.3d 283 (7th Cir.1997), Judge Polozola found that creditors providing a TILA itemization must disclose if they are retaining an upcharge. This Court adopts the reasoning set forth in *Gibson* and *Green,* and considers that dealers providing itemizations must accurately disclose amounts paid to third parties. *Gibson,* 112 F.3d at 285–86; *Green,* C.A. 96–508.

All Star contends that *Gibson* conflicts with *Charles v. Krauss Co., Ltd.,* 572 F.2d 544 (1978), in which the Fifth Circuit held that a creditor may not be held liable for

---

**5.** Notably, plaintiffs in *White* also argued that the comparable cash transaction exception did not apply because the fee would not be charged to customers who financed their vehicle through an outside bank that provided them cash to purchase the vehicle in exchange for a security interest and that handled the application for title and license. This Court adopts Judge Polozola's rejection of that argument in *White.*

**6.** Defendants' motions address a § 226.4(e) claim as well; however, the Second Amended Complaint does not contain a § 226.4(e) claim. Thus, the Court considers that plaintiffs are no longer pursuing such an argument.

TILA violations committed in good faith conformity with any Board rule, regulation, or interpretation. All Star argues that it acted in conformity with the Federal Reserve Board Official Staff Commentary to Regulation Z. This commentary addresses the situation in which the creditor retains a portion of the fee charged to a customer for a service provided by a third party. The commentary states that "the creditor in such cases may reflect that the creditor has retained a portion of the amount paid to others." In response to this argument, the Court again adopts the *Gibson* finding that "the only sensible reading of the commentary is as authorizing the dealer to disclose only the fact that he is retaining a portion of the charge, rather than the exact amount of the retention." *Gibson*, 112 F.3d at 286.

■ All Star next argues that even if it has failed to properly disclose upcharges, that plaintiffs cannot claim any damages because they have failed to show detrimental reliance. There is considerable persuasive authority to support this proposition. *E.g., Cirone-Shadow v. Union Nissan*, 955 F.Supp. 938 (N.D.Ill.1997); *Wiley v. Earl's Pawn and Jewelry, Inc.*, 950 F.Supp. 1108 (S.D.Ala.1997); *Adiel v. Chase Federal Savings and Loan Assoc.*, 630 F.Supp. 131 (S.D.Fla.1986); *aff'd*, 810 F.2d 1051 (11th Cir.1987); *but see Russell v. Fidelity Consumer Discount Co. (In re Russell)*, 72 B.R. 855 (Bankr.E.D. Penn.1987). While this Court is inclined to follow the caselaw supporting a detrimental reliance requirement, Smith's affidavit stating that she would not have paid the upcharge of $56.00 had it been properly disclosed creates genuine issue of fact regarding reliance which precludes summary judgment. Thus, summary judgment is inappropriate regarding Smith's TILA inaccurate disclosure claim against All Star.

(2) Aegis and Chase's liability as assignees

■ Because All-Star is not primarily liable for any inaccurate disclosures to the Bristers, Chase correspondingly is not secondarily liable as assignee. Aegis, on the other hand, may be liable as assignee due to All Star's potential liability to Smith. Plaintiffs

suggest that Aegis is liable under TILA for the alleged inaccurate disclosures of the license and registration fees based upon two theories. First, plaintiffs contend that Aegis is liable under 15 U.S.C. § 1641 as assignee of the retail installment contract. Secondly, plaintiffs assert that Aegis is liable due to the language of the retail installment contracts assigned to Aegis.

a. 15 U.S.C. § 1641 [7]

Title 15 U.S.C. § 1641 sets forth TILA liability for assignees. Aegis, adopting arguments made by Chase, contends that it is not liable to Smith because there is no violation apparent on the face of the disclosure statement, as required by § 1641(a). Subsection (a) sets forth "prerequisites" for assignee liability:

> (a) Except as otherwise specifically provided in this subchapter, any civil action for a violation of this subchapter or proceeding under 1607 of this title which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where the assignment was involuntary. For the purpose of this section, a violation apparent on the face of the disclosure statement includes, but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter.

Accordingly, the Court must determine whether the alleged inaccurate disclosure to Smith is "apparent" or able to be "gleaned" from the documents assigned to Aegis. *Turner*, C.A. 96–336 at 10–11; *see Guilfoy v. Suncoast Sav. and Loan Ass'n*, C.A. 94–1550, p. 19 (S.D.Fla.1995).

■ While plaintiffs' opposition is not entirely clear, it appears that they claim that a violation was "apparent" because Aegis knew of the inaccuracy. The Court is not

---

7. Chase refers to this provision as TILA § 131(a).

persuaded that assignee liability attaches if the assignee had knowledge regardless of whether the inaccuracy was apparent on the face of the disclosure. *See Alexander v. Continental Motor Werks, Inc.,* 1996 WL 79403 (N.D.Ill.1996). Furthermore, even if such knowledge were sufficient, plaintiffs have not established that Aegis had such actual knowledge. Plaintiffs set forth a number of allegations to support the argument that Aegis had knowledge. Plaintiffs first argue that Aegis had knowledge because Aegis "designed the form contract on which All Star listed the false disclosures and provided All Star with examples of exactly how the disclosures at issue were to be made and voluntarily agreed to take a contract which on its face contained misrepresentations." Nothing in these statements regarding the form of disclosure establishes that misrepresentations were apparent. Plaintiffs provide no substantiation for their conclusory statement that the contract contained misrepresentations on its face. As Judge Polozola noted when rejecting a similar argument by plaintiffs' counsel in *Turner,* " '[T]he bare allegation of actual knowledge, unsupported by any factual assertions, fails to state a TILA claim' for assignee liability under § 1641(a)." *Turner* at 12–13 (quoting *Guilfoy* at 19.)

■ Plaintiffs next cite Certificates of Registration issued by Louisiana that state the actual amounts paid to public officials for license, mortgage, title, and title handing fees. Plaintiffs state that these certificates are "typically" kept in the glove compartments of Louisiana registered vehicles. Plaintiffs do not, however, contend that such registration certificates were included in the assignment documents. Nothing in plaintiffs' statements regarding registration certificates helps establish that an inaccuracy was apparent on the face of the disclosure statement or apparent upon review of other Aegis assignment documents. The Court finds no merit in the registration certificate argument.

■ Plaintiffs next contend that Aegis should be "charged with knowledge of the actual amounts for 'license, title, and registration fees' simply by virtue of the fact that both regularly transact business in the state of Louisiana." Plaintiffs cite a 1972 Louisiana Supreme Court case addressing vendor-vendee relationships and Louisiana law regarding implied-in-law knowledge of purchasers—*W.T. Grant Co. v. Mitchell,* 263 La. 627, 269 So.2d 186 (La.1972), *aff'd,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974). The Court declines to create a constructive knowledge test derived from Louisiana state law and add it to § 1641(a)'s standards for what is "apparent" on the face of a disclosure. Nothing in *Grant* supplants § 1614(a)'s requirements that a violation be "apparent" on the face of the disclosure and nothing in the case shows that Aegis had knowledge of the alleged inaccuracies.

Plaintiffs further claim that ignorance of the law is no excuse. However, this statement lacks relevance because nothing in plaintiffs' discussion establishes that Aegis has violated any law. Plaintiffs still fail to show that § 1614(a) has been implicated. While plaintiffs also claim that Aegis was willfully blind to the violations, plaintiffs have provided no evidence that supports such an allegation.

■ In sum, plaintiffs fundamentally fail to show any disclosure violations that were "apparent" on the face of the disclosure statement or other documents assigned. Plaintiffs have not provided sufficient substantiation to establish a material issue as to whether the alleged inaccuracies in the disclosures to Smith were apparent, and accordingly summary judgment is appropriate in favor of Aegis regarding assignee liability for the alleged inaccuracies.

### b. FTC Holder Notice

Smith also asserts that Aegis is liable due to the Federal Trade Commission ("FTC") Holder in Due Course Notice included in the retail installment contract between Smith and All Star which was assigned to Aegis. The notice states that any holder "is subject to all claims and defenses" which the consumer has against the seller, limited to the amounts paid by the consumer. As plaintiffs note, this standard contractual provision is required by the FTC (in fact, the federal

regulations even set forth what typeface the notice must be printed with).

 This same issue has arisen two times this year in the Middle District of Louisiana; in those cases, Judge Polozola adopted the reasoning in *Alexander v. Continental Motor Werks, Inc.*, 1996 WL 79403 (N.D.Ill.1996), and found that the FTC Holder Notice does not subject an assignee to liability for violations of TILA by the seller of goods. *Turner v. II Diamond Motors*, Inc., C.A. 96–336; *see also Green v. Levis Motors, Inc.*, C.A. 96–508 (adopting reasoning in *Turner*). This Court similarly agrees with the reasoning in *Alexander*. The notice language cannot be read to impose liability upon an assignee regardless of whether the violation was "apparent" under § 1641(a) because such a reading would allow the generalized notice, which is required by the FTC, to nullify Congress' express requirements for assignee liability as set forth by § 1641. *See Alexander*, 1996 WL 79403, Order Denying Reconsideration at *2–*3 ("Such a result would be contrary to the congressional intent behind section 1641(a), effectively elevating an FTC regulation over the language of TILA and making that portion of TILA which pertains to assignee liability superfluous."). Accordingly, this Court finds that the FTC Holder Notice does not subject Aegis to liability as an assignee for any alleged TILA violations by All Star.

### C. Ad Valorem Tax Claim

 Plaintiffs have also claimed that All Star violated TILA by misrepresenting an ad valorem tax charge. This tax was charged to both cash and credit consumers, and accordingly the Court does not consider this charge to be a "finance charge." It is also undisputed that All Star did not retain any of the ad valorem tax charges. *See* All Star's Memo, Exh. 1 at 4–5. Accordingly, plaintiffs have failed to establish any basis for liability regarding the ad valorem tax charges.

---

8. Plaintiffs only response to this argument in their opposition memorandum is two sentences stating, "Moreover, as noted earlier there is a material issue of fact as to whether All Star imposes the charges are [sic] uniformly imposed

### II. LAFSA

Plaintiffs assert claims pursuant to LAFSA in the second count of their complaint. Second Amended Compl. at 24–25. Specifically, plaintiffs claim that defendants are liable under the LAFSA provision set forth in Louisiana Revised Statute 6:956(*O*). This section states,

> To the extent not otherwise limited in amount or prohibited under this Chapter, a seller or lender or its assignee may contract for and receive payment of additional fees and charges not specifically mentioned hereunder to the extent that such additional fees and charges are not considered to be an additional form of finance charge for purposes of Regulation Z of the Board of Governors of the Federal Reserve System, 12 C.F.R. 226.1 et seq.

 Plaintiffs contend that defendants are liable under § 956(*O*) because "The inflated 'Reg.' fee, 'license fee', and 'AD VALOREM TAX' imposed by All Star constitutes an additional form of finance charge for purposes of Regulation Z." Second Amended Compl. at 25. Because § 956(*O*) adopts a definition of "finance charge" as set forth by Regulation Z, the "comparable cash transaction" analysis discussed above and set forth in *White* equally applies to plaintiffs' LAFSA claims.[8] The fees plaintiffs cite are not such a "finance charge" and thus summary judgment is appropriate in favor of All Star, Chase, and Aegis regarding the LAFSA claim.

### III. Unjust Enrichment

Plaintiffs also assert a restitution claim: "In the event that this Court is unpersuaded by the TILA allegations, infra, plaintiffs rely upon the common law theory of restitution . . . ."

 As the parties agree, a plaintiff asserting an unjust enrichment claim under Louisiana law must show, among other things, that he has no other legal remedies.

---

in all cash and credit transactions since All Star does not permits [sic] it [sic] cash customers to obtain their own licenses and titles. Accordingly, this argument also must fail."

*E.g. Edwards v. Conforto,* 636 So.2d 901, 907 (La.1993). The Louisiana Supreme Court has further noted, "[I]f there is a contract between the parties it serves as a legal cause, an explanation for the enrichment. 'Only the unjust enrichment for which there is no justification in law or contract allows equity a role in the adjudication.'" *Id.* (quoting *Edmonston v. A–Second Mortgage Co. of Slidell, Inc.,* 289 So.2d 116, 122 (La.1974)).

█ In this matter, there is a contract between the parties. As plaintiffs themselves have stated, their claims are based upon allegations that the representations on their contracts with defendants were inaccurate. For this reason alone, the Court finds that plaintiffs fail to establish a claim for unjust enrichment.[9] Thus, summary judgment is appropriate in favor of the moving defendants regarding plaintiffs' restitution/unjust enrichment claim.

Accordingly,

IT IS ORDERED that the summary judgment motion of All–Star Chevrolet (Rec.Doc. 57) is GRANTED IN PART regarding the TILA finance charge claims, the Brister's TILA inaccurate disclosure claim, the LAF-SA claims, and the Louisiana restitution/unjust enrichment claims and DENIED IN PART regarding Smith's TILA inaccurate disclosure claim. The summary judgment motions of Aegis (Rec.Doc. 49) and Chase (Rec.Doc. 52) are GRANTED.

---

9. In further response to plaintiffs' claim that they have no other legal remedies for "defendants' fraudulent misrepresentations," the Court notes the Louisiana causes of tortious intentional misrepresentation and contractual fraud.